IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

MICHAEL O. PARMER        §

v.                       §        CIVIL ACTION NO. 6:07cv234

COMMISSIONER, SOCIAL SECURITY        §

## **MEMORANDUM OPINION AND ORDER REMANDING**

On May 25, 2007, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's applications for Social Security benefits.

### **Procedural History**

On July 19, 2005, Plaintiff filed a Title II application and a Title XVI application. *Tr*. at 15. Plaintiff alleges inability to work due to back problems, asthma, and bronchitis. *Tr*. at 53. Plaintiff timely filed a request for a hearing before an Administrative Law Judge (ALJ). After a hearing, the ALJ denied benefits.

On March 29, 2007, the Appeals Council denied Plaintiff's request for review. *Tr*. at 4-6. Consequently, the ALJ's decision became the Commissioner's decision. *See Sims v. Apfel*, 530 U.S. 103 (2000); 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a). Plaintiff sought review by this Court.

### **Standards**

In reviewing a denial of Social Security disability benefits, a federal court carefully considers the following:

1. standards of both judicial review and entitlement to Social Security benefits (*Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000));

2. the transcript and record (*Jimmerson v. Apfel, Comm'r of Soc. Sec.*, 111 F. Supp. 2d 846, 846 and 849 (E.D. Tex. 2000); *cf. Jackson v. Apfel, Comm'r of Soc. Sec.*, 234 F.3d 246 (5th Cir. 2000) (considering the record)); and

3. the parties' briefs (*Jackson*, 234 F.3d 246).

A federal court reviews the Commissioner's determination that a claimant was not disabled only to determine whether the Secretary applied the proper legal standard and whether the determination is supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *cert. denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). A federal court must affirm the Commissioner's determination that a claimant was not disabled unless that determination either is not supported by substantial evidence or involved an erroneous application of legal standards in evaluating the evidence. *Carey v. Apfel, Comm'r of Soc. Sec.*, 230 F.3d 131, 135 (5th Cir. 2000); *cf. Masterson*, 309 F.3d at 272. In determining whether the Secretary applied proper legal standards, a court considers whether the Secretary conducted the proceedings according to statutes and regulations. *Harden v. HHS*, 979 F.2d 1082, 1084 (5th Cir. 1992).

In reviewing a denial of Social Security disability benefits, a federal district court scrutinizes the entire record to determine whether substantial evidence exists (*Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *Jimmerson*, 111 F. Supp. 2d at 846 and 847 n. 2; *cf. Loza v. Apfel, Comm'r of Soc. Sec.*, 219 F.3d 378, 393 (5th Cir. 2000))to support each essential administrative finding (*Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980); *cf. Loza*, 219 F.3d at 393). Substantial evidence is more than a scintilla but less than a preponderance. *Masterson*, 309 F.3d at 272. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Myers v. Apfel, Comm'r*

*of Soc. Sec.*, 238 F.3d 617 (5th Cir. 2001). In Social Security cases, substantial evidence must do more than create a mere suspicion of the existence of the fact to be established. *Haywood*, 888 F.2d at 1466; *Jimmerson*, 111 F. Supp. 2d at 847. In determining whether substantial evidence supports the decision, a court considers whether the ALJ's decision reflects careful consideration of the evidence. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

Medical records play a significant role in reviewing the ALJ's decision. *Greenspan*, 38 F.2d at 238. In determining whether substantial evidence supports the decision, a court considers the following medical evidence:

1. objective medical facts (*Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); Social Security Ruling (SSR) 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2));

2. medical sources' statements and reports (SSR 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2); *Richardson*, 402 U.S. at 402; *Loza*, 219 F.3d at 393; *Martinez*, 64 F.3d at 174);

3. clinical findings (*Homan v. Comm'r of Soc. Sec. Admin.*, 84 F. Supp. 2d 814, 818 (E.D. Tex. 2000); *see also Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir.1987));

4. the claimant's medical history (*Loza*, 219 F.3d at 393; *see also* 20 C.F.R. § 404.1512(b)(1)-(6));

5. statements and reports from the claimant and other persons about the claimant's medical history, treatment, and response (SSR 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2)); and

6. other information concerning the claimant's symptoms and how they affect the claimant's ability to work (SSR 96-7p; *cf.* 20 C.F.R. § 404.1529(c)(2)).

Medically acceptable evidence is not limited to the narrow strictures of laboratory findings or test results. *Loza*, 219 F.3d at 393. Generally, the opinions, diagnoses, and medical evidence of a treating physician familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. *Id*. at 395.

In determining whether substantial evidence supports the decision, a court considers record evidence detracting from the weight of evidence supporting the decision. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986); *Homan*, 84 F. Supp. 2d at 818. A federal district court cannot affirm the denial of Social Security disability benefits if the denial clearly was not based on substantial evidence. *Jimmerson*, 111 F. Supp. 2d at 849.

To determine disability, the Commissioner uses a five-step analysis. *Boyd v. Apfel, Comm'r of Soc. Sec.*, 239 F.3d 698 (5th Cir. 2001); *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520. At steps one through four, the claimant has the burden of proof. *Masterson*, 309 F.3d at 272; 20 C.F.R.§ 404.1520. If a claimant bears the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work, then the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Boyd*, 239 F.3d 698; 20 C.F.R. § 404.1520(f); Acquiescence Ruling 00-4(2); *see also Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272. A finding that the claimant is or is not disabled at any point in the five-step process is conclusive and terminates the analysis. *Boyd*, 239 F.3d at 705.

At step one, to qualify for Social Security disability benefits the claimant must not be working presently at any substantial gainful activity. *Boyd*, 239 F.3d at 704; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(a)-(b). At step two, to qualify for Social Security disability benefits the claimant must have a severe impairment. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(c).

At step three the Commissioner compares the medical evidence of the claimant's impairment(s) to the impairments listed in the regulations appendix. *Shave v. Apfel, Comm'r of Soc.*

*Sec.*, 238 F.3d 592 (5th Cir. 2001); 20 C.F.R. § 404.1520(d); *see also Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236. If the claimant's impairment does not match or equal a listed impairment, then the evaluation proceeds to step four. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).

The issue at step four is whether the claimant's impairment prevents him from performing his past relevant work. *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e). The residual functional capacity assessment is used "to determine whether an individual is able to do past relevant work." SSR 96-8p at 2.

Residual functional capacity is a medical assessment of what a claimant can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his medically determinable impairments. SSR 83-10 at 7. The residual functional capacity assessment must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis, including the functions in 20 C.F.R. § 404.1545(b) and (d). SSR 96-8p at 1. Title 20 C.F.R. § 404.1545(b) includes the functions of walking, standing, sitting, pushing, pulling, lifting, carrying, and other physical functions, including manipulative or postural functions, such as reaching, handling, stooping, and crouching. Title 20 C.F.R. § 404.1545(d) includes other abilities that impairments affect, such as impairment(s) imposing environmental restrictions. 20 C.F.R. § 404.1545(d).

Exertional capacity addresses limitations and restrictions of physical strength and defines the remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p at 5. Nonexertional capacity considers all limitations and restrictions that are work-related physical demands not reflected in the seven strength

demands, mental limitations and restrictions, and restrictions that are postural (e.g., stooping and climbing), manipulative (e.g., reaching and handling), and relating to tolerance of various environmental factors. *Id*.

A claimant's residual functional capacity is determined by combining a medical assessment of the claimant's impairments with descriptions by physicians, the applicant, or others of any limitations on the claimant's ability to work. *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). SSA assesses residual functional capacity based on all relevant record evidence of a claimant's ability to do work-related activities; relevant record evidence of a claimant's ability to do work-related activities includes acceptable medical sources and information about the claimant's symptoms. SSR 96-8p. Acceptable medical sources for determining residual functional capacity include medical source statements. *Id*.

Without reports from qualified medical experts, a court cannot determine the effects of a claimant's conditions, no matter how small, on his ability to perform work; consequently, without reports from qualified medical experts, the court cannot agree that substantial evidence supports the conclusion that a claimant is not disabled. *Ripley v. Chater*, 67 F.3d 552, 557, n. 27 (5th Cir. 1995). If a claimant's medical treatment significantly interrupts the claimant's ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant's engaging in gainful activity. *Newton*, 209 F.3d at 459.

Substantial evidence must support an ALJ's determination of a claimant's residual functional capacity. *Ripley*, 67 F.3d at 557. The adjudicator must make every reasonable effort to ensure that the file contains sufficient evidence to assess residual functional capacity. SSR 96-8p at 5. SSR 96-5p requires that in assessing residual functional capacity, adjudicators must weigh, pursuant to

20 C.F.R. § 404.1527, medical source statements and provide appropriate explanations for accepting or rejecting those opinions. *Newton*, 209 F.3d at 456 (citing SSR 96-5p). An ALJ has discretion to give no weight to a physician's opinion about a claimant's residual functional capacity (*cf. Greenspan*, 38 F.3d at 237) as long as he gives appropriate explanations for doing so (*see Newton*, 209 F.3d at 456; SSR 96-5p). At step four, if the claimant is capable of performing his past relevant work, then he is not disabled. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; 20 C.F.R. § 404.1520(e).

At step five the Commissioner must show that in light of the claimant's residual functional capacity, age, education, and past work experience, the claimant's impairment does not prevent his doing any other work. *Boyd*, 239 F.3d 698; *Greenspan*, 38 F.3d at 236; *see also* 20 C.F.R. § 404.1520(b)-(e). Any other work includes any other kind of substantial gainful work existing "in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(f) and 404.1569a(a); *Loza*, 219 F.3d at 390; *Greenspan*, 38 F.3d at 236. An ALJ may base a finding that a claimant is capable of performing jobs available in significant numbers in the national economy on a vocational expert's testimony identifying jobs. *Carey*, 230 F.3d at 135 and 147. If SSA meets this burden of showing that the claimant can perform relevant work, then the claimant must prove that he cannot in fact perform the work suggested. *Boyd*, 239 F.3d at 705. If a claimant cannot do his past work or other work, then the claimant qualifies for benefits. *Loza*, 219 F.3d at 390; *see also Sullivan*, 493 U.S. at 525-26; 20 C.F.R. § 404.1520(e)-(f).

The most significant difference between decision making by SSA and by the courts is that SSA replaces normal adversary procedure with investigatory procedure. *Sims*, 530 U.S. 103. SSA conducts the administrative review process in an informal, nonadversary manner. *Id*. (quoting 20

CFR § 404.900(b)). The Council, not the claimant, has primary responsibility to identify and develop the issues. *Id*. at 112.

The ALJ has sole responsibility for determining a claimant's disability status. *Newton*, 209 F.3d at 455. The ALJ has a duty to investigate the facts and develop the arguments both for and against granting Social Security disability benefits. *Sims*, 530 U.S. 103. An ALJ has a duty to fully, fairly develop the facts relative to a disability benefits claim. *Carey*, 230 F.3d at 142.

If evidence from a claimant's treating physician, or psychologist, or other medical source is inadequate for determining whether a claimant is disabled, then SSA needs additional information to reach a determination or a decision and will first recontact the treating physician, or psychologist, or other medical source to determine whether the additional information needed is readily available. *Newton*, 209 F.3d at 457; 20 C.F.R. § 404.1512(e).

If an ALJ determines that a treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, then absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek, pursuant to 20 C.F.R. § 404.1512(e), clarification or additional evidence from the treating physician. *Newton*, 209 F.3d at 453. Some cases require additional development, for example, to either obtain more evidence or clarify reported clinical signs or laboratory findings; in some cases the additional development required may either provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or reconcile what at first seemed to be an inconsistency between a treating source's medical opinion and the other substantial record evidence. *Id*. at 458; SSR 96-2p.

The Secretary must give a treating physician's opinion substantial weight unless good cause is shown to the contrary. *Fraga*, 810 F.2d at 1303 n. 8; *see also Leggett v. Chater*, 67 F.3d 558, 566

(5th Cir. 1995). The Secretary is required to give good reasons in the notice of determination or decision for the weight given to opinions of a claimant's treating sources. 20 C.F.R. § 416.927.

The opinion of a treating physician familiar with the claimant's impairments, treatments, and responses, should be accorded great weight in determining disability. *Newton*, 209 F.3d at 455; *see also Greenspan*, 38 F.3d at 237. The ALJ may give less weight to a treating physician's opinion if good cause is shown for doing so. *Loza*, 219 F.3d at 395; *Greenspan*, 38 F.3d at 237. Good cause must appear in either the ALJ's opinion or the record to justify the ALJ's failure to give treating doctors' medical evidence considerable weight. *Loza*, 219 F.3d at 395.

Construing 20 C.F.R. § 404.1527(d)(2), Social Security Ruling 96-2p states: A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial case record evidence means that the opinion does not control, not that the opinion should be rejected. *Newton*, 209 F.3d at 456. In many cases, even if a treating source's medical opinion does not meet the test for controlling weight, the opinion will be entitled to the greatest weight and should be adopted. *Id*.; SSR 96-2p. SSA Regulations require SSA, in its notice of determination or decision, always to give good reasons for the weight SSA gives the opinion of the claimant's treating source. *Newton*, 209 F.3d at 456 (quoting 20 C.F.R. § 404.1527(d)(2)).

**Facts**

*Background – Age and Education*

At the time of the ALJ's decision, October 24, 2006, Plaintiff was a forty-five-year-old with a ninth grade education. *Tr*. at 23 and 221. Plaintiff alleges a disability onset date of January 1, 2001, due to back problems, asthma, and bronchitis. *Tr*. at 17 and 53.

9

*Medical Facts and Opinions*

Medical evidence includes the following medical records:

*Examining Source F.P. Reuter, M.D.*

On September 6, 2005, examining physician F.P. Reuter, M.D. reported that Plaintiff walks without difficulty, can bend to 75 degrees, and can squat. *Tr.* at 120. Dr. Reuter diagnosed Plaintiff's condition as chronic back pain and chronic obstructive pulmonary disease, with a history of asthma. *Tr.* at 120.

*Treating Physician Wendell Hand, M.D.*

Treating physician Wendell Hand, M.D. diagnosed Plaintiff with asthma. *Tr.* at 115. On November 10, 2000, Dr. Hand noted that Plaintiff had previously had pneumonia, and Dr. Hand diagnosed his current condition as pneumonia. *Tr.* at 118. On October 31, 2001, and February 11, May 17, and October 3, 2002, Dr. Hand prescribed refills of Plaintiff's Albuterol inhaler. *Tr.* at 117. On October 25, 2005, Dr. Hand opined that Plaintiff retained the residual functional capacity to, in an eight-hour workday, walk for less than one hour; sit and stand for one hour total each; lift and carry five pounds for one hour each; reach for thirty minutes; and perform handling, fingering, feeling, stooping, kneeling, and crouching for thirty minutes each; but must lie down for two hours total. *Tr.* at 183-86.

*Disability Determination Services*

On February 22, 2006, Disability Determination Services physician Kelvin Samaratunga, M.D. noted that the medical records show a primary diagnosis of a lumbar spine impairment and secondary diagnosis of asthma. *Tr.* at 173. He opined that the medical records show that Plaintiff can lift and/or carry ten pounds frequently and twenty occasionally; stand and/or walk six hours; sit

six hours; frequently balance, kneel, and crawl; and occasionally climb, stoop, and crouch; but must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. *Tr*. at 174-80.

***The Hearing***

At the hearing, Plaintiff, a medical expert, and a vocational expert testified. *Tr*. at 216. Plaintiff testified that he stopped working because his back was giving him a lot of trouble. *Tr*. at 222-24. He is unable to work because his back cannot handle the standing, climbing, bending, stooping, and moving side-to-side. *Tr*. at 224.

Plaintiff sees Dr. Kenneth Kemp, a spine specialist, for his back, and his primary physician is Dr. Hand. *Tr*. at 226. Plaintiff's medication makes him very drowsy. *Tr*. at 226. Plaintiff has had four injections for his back, but they helped very little. *Tr*. at 227.

He has back pain which radiates three or four times a week into his left leg, where it usually lasts from thirty minutes to an hour. *Tr*. at 224. He has constant, stabbing pain which throbs across his low back. *Tr*. at 233. His knees also bother him. *Tr*. at 225.

He has good and bad days, but mostly bad. *Tr*. at 231. On a bad day, if lying down does not relieve his pain, then he tries walking or sitting. *Tr*. at 231. He does not sleep through the night and usually sleeps only about four hours. *Tr*. at 232.

Reaching out with his hand causes pain if his body gets out of normal alignment. *Tr*. at 229. He could not lift a gallon of milk overhead because it would cause shooting pain. *Tr*. at 230.

The medical expert testified that Plaintiff's medical records show degenerative changes in the lumbar spine, pneumonia, and hepatitis C. *Tr*. at 234. An epidural steroid injection gave minimal, if any, relief. *Tr*. at 235. Examinations have shown a slow gait and some increased pain with straight leg raising and a fairly constant, longitudinal record of frequent complaints of pain, and

anti-depressants and rather strong pain medications, which have not relieved him of his pain. *Tr.* at 235. His complaints of pain have been consistent. *Tr.* at 236.

An MRI suggests a benign blood vessel tumor. *Tr.* at 235. The records also indicate that he should avoid pulmonary irritants. *Tr.* at 236-37.

His back pain would reduce his ability to lift overhead and push and pull. *Tr.* at 237. He probably would need the option to change positions periodically because of his pain. *Tr.* at 240.

The treating physician's notes are not entirely legible. *Tr.* at 236 and 242. The treating physician probably assessed Plaintiff's residual functional capacity based on the physician's having seen him on a number of occasions. *Tr.* at 241.

The vocational expert testified that if a hypothetical claimant with Plaintiff's age, education, and vocational experience retained the residual functional capacity to perform light work with a sit/stand option every thirty minutes and occasional pushing/pulling, stooping, squatting, crouching, and crawling, but no climbing ladders, balancing, or working on scaffolds or around pulmonary irritants, then he could perform work existing in significant numbers in the national economy. *Tr.* at 246. If his performance of exertional functions were limited to that of less than sedentary work, then he probably could not perform competitive work in the national economy. *Tr.* at 248.

*ALJ's Decision*

On October 24, 2006, the ALJ issued an opinion denying benefits to Plaintiff. *Tr.* at 24. Following the five-step evaluation process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. *Tr.* at 17. At step two the ALJ determined that Plaintiff has severe impairments of musculoskeletal disorders, chronic obstructive pulmonary disease, and a history of asthma and depression. *Tr.* at 17. At step three the ALJ found

that the medical findings associated with Plaintiff's impairments do not show that they meet or equal, individually or in combination, any listed impairment's requirements. *Tr*. at 19.

At step four the ALJ found that Plaintiff retains the residual functional capacity to lift twenty pounds occasionally; lift and/or carry ten pounds frequently; frequently walk, sit, and stand, if allowed to alternate between sitting and standing every thirty minutes; and occasionally stoop, bend, crouch, crawl, squat, or kneel; but that he should avoid balancing, climbing, using ladders or scaffolds, and working around pulmonary irritants. *Tr*. at 20. The ALJ noted that examining physician F.P. Reuter, M.D. reported that Plaintiff walks without difficulty, can bend to 75 degrees, and can squat. *Tr*. at 20.

The ALJ noted that Dr. Hand has treated the patient, and the ALJ addressed Dr. Hand's assessment of Plaintiff's residual functional capacity and explicitly rejected the assessment because Dr. Hand failed to describe the aspects of Plaintiff's medical history, clinical findings, laboratory findings, diagnoses, or treatment for the diagnoses on which Dr. Hand based his assessment. *Tr*. at 21. The ALJ said that Dr. Hand did not address the medical history and medical evidence on which he based his assessment, failed to document and support his assessment, and failed to address the nexus between his assessment and Plaintiff's medical condition. *Tr*. at 21-22. The ALJ gave Dr. Hand's assessment no weight. *Tr*. at 22.

The ALJ found that Plaintiff cannot perform his past relevant work. *Tr*. at 23. The ALJ found, based on vocational expert testimony, that Plaintiff can perform other work existing in significant numbers in the national economy. *Tr*. at 24. Therefore, the ALJ concluded that Plaintiff is not entitled to a period of disability or disability insurance benefits under the Act. *Tr*. at 24.

**Discussion**

Whether the ALJ erred in rejecting treating physician Dr. Hand's assessment that Plaintiff retained the residual functional capacity to, in an eight-hour workday, walk for less than one hour; sit and stand for one hour total each; lift and carry five pounds for one hour each; reach for thirty minutes; and perform handling, fingering, feeling, stooping, kneeling, and crouching for thirty minutes each; but must lie down two hours total. Treating physician Wendell Hand, M.D. opined that Plaintiff retained the residual functional capacity to, in an eight-hour workday, walk for less than one hour; sit and stand for one hour total each; lift and carry five pounds for one hour each; reach for thirty minutes; and perform handling, fingering, feeling, stooping, kneeling, and crouching for thirty minutes each; but must lie down two hours total. *Tr.* at 183-86.

The ALJ found that Plaintiff retains the residual functional capacity to lift twenty pounds occasionally; lift and/or carry ten pounds frequently; frequently walk, sit, and stand, if allowed to alternate between sitting and standing every thirty minutes; and occasionally stoop, bend, crouch, crawl, squat, or kneel; but that he should avoid balancing, climbing, using ladders or scaffolds, and working around pulmonary irritants. *Tr.* at 20. Occasionally means from very little up to one-third of the time. *See* Social Security Ruling (SSR) 83-14 at 2 and 5.

The ALJ noted that Dr. Hand has treated the patient, and the ALJ addressed Dr. Hand's assessment of Plaintiff's residual functional capacity and explicitly rejected the assessment because Dr. Hand failed to describe the aspects of Plaintiff's medical history, clinical findings, laboratory findings, diagnoses, or treatment for the diagnoses on which Dr. Hand based his assessment. *Tr.* at 21. The ALJ said that Dr. Hand did not address the medical history and medical evidence on which he based his assessment, failed to document and support his assessment, and failed to address the

14

nexus between his assessment and Plaintiff's medical condition. *Tr.* at 21-22. The ALJ gave Dr. Hand's assessment no weight. *Tr.* at 22. The medical expert testified that the treating physician probably assessed Plaintiff's residual functional capacity based on the physician's having seen him on a number of occasions. *Tr.* at 241.

If an ALJ determines that a treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, then absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek, pursuant to 20 C.F.R. § 404.1512(e), clarification or additional evidence from the treating physician. *Newton*, 209 F.3d at 453. The ALJ noted that examining physician F.P. Reuter, M.D. reported that Plaintiff walks without difficulty, can bend to 75 degrees, and can squat. *Tr.* at 20. The ALJ did not discuss any treating or examining source's assessment of Plaintiff's ability to lift, carry, sit, stand, stoop, crouch, crawl, or kneel.

If the ALJ disregards a treating physician's opinion, a court scrutinizes the ALJ's decision to determine whether the ALJ made his decision based on evidence contradicting the treating physician's opinion. *Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir. 1986). The Secretary is required to give good reasons in the notice of determination or decision for the weight given to opinions of a claimant's treating sources. 20 C.F.R. § 416.927.

The ALJ's decision does not show that his rejection of Dr. Hand's assessment was based on treating or examining source evidence contradicting his opinion. *See Milam*, 782 F.2d at 1287. The decision does not give good reasons for giving no weight to Dr. Hand's assessment.

15

## **CONCLUSION**

Having reviewed the record, this Court determines that the record shows neither that the Administration correctly applied the applicable legal standards nor that substantial evidence supports the Administration's determination that Plaintiff is not disabled. The Court therefore

**ORDERS**, **ADJUDGES,** and **DECREES** that this action is **REVERSED** and **REMANDED** for further development; and

**ORDERS** that all motions not previously ruled on are denied.

**SIGNED this 8th day of September, 2008.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE